```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF DELAWARE
_____
JAMES A. HORISK             :
                            :
           Plaintiff,       :    CIVIL ACTION NO.
                            :
      v.                    :    JURY TRIAL DEMANDED
                            :
                            :
LEAR CORPORATION,           :
a Delaware corporation,     :
           Defendant.       :
_____:
```

**COMPLAINT**

PARTIES

1. Plaintiff, James A. Horisk, is an adult individual and citizen of the United States, and a resident of the state of Delaware, having at all times relevant and material, an address at 36452 Old Mill Bridge Road, Frankford, Delaware 19945.

2. Defendant, Lear Corporation is, upon information and belief, a corporation or other form of business organization, having at all times relevant and material, a principal place of business and plant facility at 200 McIntire Drive, Newark, Delaware 19711.

3. At all times relevant and material, defendant acted by and through its officers, agents, servants and/or employees, who at all times relevant and material acted within the scope of their authority and within the course of defendant's business, mission and affairs.

1

## JURISDICTION AND VENUE

4. This district court has jurisdiction over this action against the defendant pursuant to 28 U.S.C. §1331, in that the cause of action arises under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 et seq., as amended, and related federal regulations.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), in that defendant resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district and no real property is involved.

## FACTUAL BACKGROUND

6. Defendant, Lear Corporation ("Lear" or the "company") is in the business of manufacturing and outsourcing to Chrysler Corporation, automobile seats and related components, operating (during the year of plaintiff's termination) with approximately 250 employees out of a manufacturing plant located in Newark, Delaware.

7. Plaintiff (d/o/b 05/09/48) began his employment at Lear on September 7, 2001, working as a materials supervisor in operations, second shift, at the Newark, Delaware plant, in charge of receiving and shipping goods for use in manufacturing.

8. At the time of plaintiff's hire, plaintiff had 18 years experience with General Motors Corp. in quality control and supervision and assembly line supervision; over three years as a

quality/process implementation manager with the Hibbert Group, and two years as logistics coordinator with Sears Roebuck & Co.

9. In April, 2002, plaintiff was selected for the Six Sigma program (also known as the Continuous Improvement Champion position) at Lear, which offered plaintiff the opportunity to work in logistics and problem-solving within the manufacturing process at the plant.

10. After specialized training in Dearborn, Michigan, plaintiff began his work in the Six Sigma program in September, 2002, as a coordinator in the areas of quality improvement and costs savings in the plant facility, reporting directly to the plant manager.

11. During plaintiff's two (2) year tenure in Six Sigma, because of his experience, plaintiff was continually pulled from the Six Sigma position and assigned to work the shipping supervisor's position, occasionally being sent home only to return to work the supervisor's second shift.

12. In or about the first week in April, 2004, during his Six Sigma tenure, Victor Lynch, plant manager (and plaintiff's supervisor), at a department meeting with approximately 10 employees present, asked plaintiff: "Jim, how old are you anyway?"

13. Plaintiff responded by stating his then-age as "55", and subsequently reported the comment, which was completely out

of place and openly derogatory, to Spencer Harris, Manager, Human Resources department, and management took no action.

14. In late June, 2004, plaintiff, prior to the end of his Six Sigma tenure, was informed by Spencer Harris he would be moved from Six Sigma back to his prior position as a materials/receiving supervisor, working first shift.

15. At the meeting, Spencer Harris specifically informed plaintiff his Six Sigma bonus (10% of his annual salary) would not be affected, that he would be moved within the July-September time frame to protect his bonus, and his bonus would be paid in October, 2004.

16. Plaintiff was further informed that Spencer Harris had collaborated with Jeff Hill, corporate Six Sigma Champion at the Newark plant to protect plaintiff's bonus, and plaintiff was again reassured the bonus would be paid as scheduled.

17. Plaintiff returned to his position as a materials supervisor, working first shift, in the receiving department. October arrived and no bonus was paid.

18. Plaintiff inquired of Human Resources, through David Yono, new head of the department (Harris was transferred) about the bonus, and Yono reported per Jeff Hill the bonus would be paid but delays were normal.

19. Hill left Six Sigma and was replaced by Joe Scavone, who sent Plaintiff an email notifying him the bonus was "denied".

Plaintiff immediately confronted Victor Lynch about the denial, who stated he would look into the matter to assist in getting the bonus paid.

20. Several days later, plaintiff met with Lynch and was told that Six Sigma management (Continuous Improvement Group, now run by Scavone) decided that because plaintiff (at management's special request) had spent two months coordinating yard and product rework activity in support of a new product launch, the bonus would not be paid.

21. The decision denying the bonus was abrupt, and nothing was said to plaintiff about not meeting product improvement goals or objectives; the meeting was the first time plaintiff was informed time spent outside of Six Sigma duties would affect the bonus, which was absurd since Six Sigma, by definition, would include Plaintiff's new product launch duties involving quality.

22. Two other Six Sigma members, Jim Racine (then age 32) and Nancy Murray (then age 35), similarly situated as plaintiff, received their Six Sigma bonuses for both Six Sigma years but plaintiff was denied his second-year bonus, where they spent the same amount of time in Six Sigma and, like plaintiff, worked on continuous improvement goals and objectives.

23. Several weeks later, with no pre-notice or warning, plaintiff was summoned to a meeting with his supervisor, Marie Childress, with another Human Resources employee present, and was

given a formal derogatory employment review.

24. Plaintiff was critiqued, without specifics, in areas of packing slip counts/amounts and hourly employee discipline, however, plaintiff during his entire tenure at Lear never received any notice or warning, or review, that his work in any area or department was deficient or in need of improvement.

25. Plaintiff signed the review over objection, and agreed to attend weekly Friday meetings to discuss "improvement" although the specifics of the improvement were not specified and management set no goals.

26. Prior to the review, from management's reports in the workplace, plaintiff had performed beyond expectations and was a model employee and a high achiever – in part, the reason why he was chosen for the selective Six Sigma Program where he performed according to management's expectations, equivalently to Racine and Murray.

27. From the date of the review forward, no such meetings were held or called, and plaintiff had no further formal or informal reviews or evaluations by management or Human Resources.

28. In December, 2004, plaintiff requested, and was granted, two vacation days to which he was entitled and the forms required of Human Resources were completed and signed by his manager.

29. When Plaintiff was out, plaintiff was erroneously

called back to work by his manager, with management inexplicably claiming no vacation time was due plaintiff, and plaintiff, over objection, returned to work.

30. At the time, Plaintiff was the oldest supervisor on the floor, and no other employee at Lear in Newark was called back to work from a vacation in December, 2004, when vacation time was required to be used, or lost.

31. Plaintiff' employment continued uneventfully, with plaintiff again filling in for the second shift shipping supervisor position in late December, 2004.

32. On January 21, 2005, plaintiff was summoned to Victor Lynch's office for a meeting with Lynch and David Yono (new Human Resources Manager) and abruptly terminated.

33. Messrs. Lynch and Yono attempted to mollify the situation by using the words "layoff" to describe the termination, and that plaintiff's job as first shift materials supervisor was "eliminated", but gave no other information.

34. Plaintiff's position was filled by an approximately 30 year old male from outside the company, Michael Pierson, who had interviewed during the third week of February and was requested by Lear to start immediately.

35. Salaried employees at Lear, known as "expeditors" from the same department, covered plaintiff's position until Pierson began working at Lear on March 7, 2005, filling the position of

second shift supervisor after giving his employer two weeks notice.

36. The then-second shift supervisor moved to first shift to cover plaintiff's position. Both positions are classified at Lear as "material supervisor" positions.

37. Plaintiff's position was never eliminated but simply re-staffed, revealing the company's employment reason in determining to replace a then-56 year old employee with a far-lesser experienced 30 year old employee as nothing more than a sham and pretext, with age being the significant difference between the two men in the two positions.

38. Plaintiff's right to file this civil action is based on a notice of right to sue letter dated June 12, 2006 by the U.S. Equal Opportunity Commission, Philadelphia District Office.

39. Plaintiff's rights have accrued and are therefore ripe under that letter and applicable federal law.

40. Plaintiff has complied with all conditions precedent to the filing of this civil action.

<u>COUNT I</u>

Age Discrimination in Employment Act of 1967
[Age Discrimination]
v.
<u>Defendant,Lear Corp.</u>

41. Plaintiff, James A. Horisk, incorporates herein by reference paragraphs 1 through 40, inclusive, as though the same

were more fully set forth at length.

42. Plaintiff was over forty (40) years old at the time Perkins was hired, and at the time plaintiff was terminated from his employment.

43. Plaintiff was accorded different treatment, including termination, from a younger employee under the age of 40 who was hired by the company to perform plaintiff's job duties and function.

44. Plaintiff's termination by Lear was part of a scheme of the company to re-staff plaintiff's position with a younger employee and rid the company of an over-40 employee.

45. The company acted with an illegal discriminatory motive towards plaintiff.

46. As a result of his termination, plaintiff, James A. Horisk, has suffered direct and indirect harm and damages.

47. The company, acting as aforesaid, discriminated against the plaintiff under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (the "ADEA") and has wilfully violated the ADEA.

48. The company, acting as aforesaid, engaged in such illegal discriminatory practices with malice or with reckless indifference to the federally protected rights of plaintiff.

WHEREFORE, plaintiff, James A. Horisk, demands judgment in his favor and against defendant, Lear Corporation, for monetary

damages including retroactive back pay, front pay, pre-judgment interest, liquidated damages, injunctive relief and/or affirmative relief as determined by the Court necessary to effectuate the purposes of the ADEA including reinstatement to employment, attorneys' fees and costs, all under the ADEA, as amended, and all applicable federal regulations promulgated thereunder, and for such other relief as the court deems just.

                                        LAW OFFICE OF JOHN M. LAROSA
                                        /s/ John M. LaRosa
                                        JOHN M. LaROSA, ESQUIRE
                                        Bar I.D. No. 4275
                                        Two East 7th Street
                                        Suite 302
                                        Wilmington, DE 19801-3707
                                        (302) 888-1290
                                        JLR@LaRosaLaw.com

                                        Attorney for plaintiff,
                                        James A. Horisk

Dated: September 11, 2006

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
James A. Horisk
36452 Old Mill Bridge Road
Frankford, DE 19945

### DEFENDANTS
Lear Corporation
200 McIntire Drive
Newark, Delaware 19711

(b) County of Residence of First Listed Plaintiff    Sussex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
John M. LaRosa, Esquire
Law Office of John M. LaRosa
Two East 7th Street, Suite 302, Wilmington, DE 19801-3707
(302) 888-1290

Attorneys (If Known)
UNKNOWN

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | X 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Age discrimination in employment action pursuant to Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. section 621 et seq.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ unliquidated
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 9/11/06
SIGNATURE OF ATTORNEY OF RECORD
/s/ John M. LaRosa

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 06-560

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

_9/11/06_
(Date forms issued)

_John M. LaRosa_
(Signature of Party or their Representative)

_John M. LaRosa_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action